(No. 51772.—

*In re* CHARLES C. PORCELLI, Attorney, Respondent.

*Opinion filed November 21, 1979.*

474

John C. O'Malley, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Martin, Ltd., of Chicago, for respondent.

MR. JUSTICE MORAN delivered the opinion of the court:

A disciplinary proceeding was brought against respondent, Charles C. Porcelli, by the Administrator of the Attorney Registration and Disciplinary Commission.

The respondent had been indicted for bribery and found not guilty by the trial court on April 27, 1976. On November 15, 1977, the Administrator filed a two-count complaint charging respondent with unethical conduct involving fraud and deceit. Proceedings were held before a hearing panel of the Attorney Registration and Disciplinary Commission which found that the Administrator had

proved the allegation of count I. The panel declined to make a finding as to count II. In its report, the panel recommended that respondent be suspended from the practice of law for one year. The Review Board filed its report recommending, based on count I, that respondent be suspended from the practice of law for a period of one year *and* until further order of the court.

Count I of the complaint alleged that respondent had paid $300 in cash to Officer Strutz of the Glencoe Police Department in order to assure Strutz's accurate completion of an alcohol-influence report on respondent's client, Anthony Ormiston, who had been arrested for driving while under the influence of alcohol. The complaint recited that respondent believed that if he did not pay the officer, the report would be inaccurately completed in a manner that would reflect adversely upon his client. Count II of the complaint charged that respondent failed to report the officer's conduct to the proper authorities.

Other than respondent's character witnesses, only the respondent testified before the hearing panel. The respondent testified that Ormiston, 72 years of age, contacted him on September 27, 1972, and related that Strutz had arrested him on September 9, 1972, for driving while under the influence of alcohol. Ormiston indicated that he felt Strutz had something of a vendetta against him inasmuch as the same officer had issued a traffic citation to him during the previous week. Although Ormiston had retained another lawyer to represent him at trial, he engaged the respondent to review the case and determine the seriousness of the charge. Respondent agreed to make this evaluation, at which point Ormiston voluntarily gave respondent $300 in cash.

Respondent contacted Strutz and requested that a copy of the alcohol-influence report be mailed to him. When the officer refused, respondent agreed to go to the Glencoe police station that evening to obtain the report.

At the station, the officer showed respondent a copy of an alcohol-influence report and two green cards which registered breathalizer results. The readings on those cards were .08 and .10. (A statutory presumption of intoxication applies to results of .10 or over.) These breathalizer findings had not been entered on the appropriate space of the alcohol-influence report. On the observation-report section, boxes were checked indicating that Ormiston's breath was both "moderate" and "strong." Respondent admitted that this report was one made out by Dr. Minnema, rather than by Strutz, and that several of the questions thereon had been left unanswered.

Strutz told respondent that he had not prepared his own alcohol-influence report because he had been on vacation and had been busy. Strutz stated that his report would vary somewhat from Dr. Minnema's in that Ormiston should have been marked " 'sure' on turns" and " 'sure' on the finger-to-nose test." When respondent asked when his report would be ready, Strutz replied, "What is there in this for me?" and explained that he did not like Ormiston and that "My report can be one way or another." Respondent asked what he would do about the breathalizer cards and Strutz replied, "I will turn in the card that instead of having a .08 will be .18, instead of .10 will be a .20." Strutz said that he wanted $300 for himself or he would prepare a report that was totally unfavorable to Ormiston. Respondent agreed to pay the money and left with the understanding that Strutz would contact him.

On the following day, September 28, 1972, Strutz telephoned the respondent asking him to pick up the report that he had prepared. During this conversation, respondent admitted, that, in referring to Strutz's report, he asked for "one more 'sure' and one 'hesitant' on the finger to nose" and "Give me a 'sure' on the turning." Respondent told Strutz that there would be $300 for him as agreed.

Respondent met with Strutz in a small room at the Glencoe Police Department on that evening. Strutz left the room and returned with two alcohol-influence reports, one a copy of Dr. Minnema's and the other the report that Strutz had prepared. Strutz handed respondent his report and put Dr. Minnema's in his pocket. Respondent gave the officer the $300 in cash. Respondent testified that, at the time, he believed or understood that Dr. Minnema's report would be destroyed. Respondent left the police station and was arrested shortly thereafter.

Relying on *In re Horwitz* (1935), 360 Ill. 313, the respondent argues that dismissal should have been granted on the basis that respondent was entrapped. In *Horwitz,* an attorney was drawn into an elaborate scheme in which he filed a false personal injury claim based on information given to him by his client. He was not aware of the falsity of the claim or of the underlying scheme until disciplinary action was instituted against him. The court refused to impose any discipline.

In *In re Howard* (1977), 69 Ill. 2d 343, however, this court flatly refused to allow the defense of entrapment. Attorney Howard faced a disciplinary proceeding on charges that he had on two occasions paid an arresting officer $50 to testify "to the truth" as listed on an alcoholic-influence report. This court found that Howard could not avail himself of the defense of entrapment because, at the time the acts were committed, he, unlike *Horwitz,* "must have been completely cognizant of their unsavory quality." (*In re Howard* (1977), 69 Ill. 2d 343, 352.) Certainly, the respondent in this case cannot be equated to the innocent attorney in *Horwitz.* No undue, prolonged or persistent pressures were urged on this respondent by the officer (*People v. Hall* (1962), 25 Ill. 2d 297, 301); nor can the single statement made by the police officer to the respondent be labeled "undue pressure." *In re Howard* (1977), 69 Ill. 2d 343, 353.

We add, as pointed out by the Administrator, that the respondent took an active part in the preparation of Strutz's report when he asked for "a 'sure' on the turning" and "one more 'sure' and one 'hesitant' on the finger to nose." This conduct negates the idea that extreme pressure was forced upon the respondent. Additionally, respondent was aware that the "truth" was available through an independent party, Dr. Minnema, who had prepared a report on Ormiston on the day of his arrest. Respondent not only failed to rely on this independent source but admitted that he believed the physician's report was to be "disposed of." We hold that this case is not one in which the defense of entrapment may be applied. As in *Howard,* the respondent's ready negotiations evidence a willingness to join in the illegal conduct which is inconsistent with the defense of entrapment.

It would be difficult to imagine circumstances in which the defense of entrapment would be available to an attorney in a disciplinary proceeding. Attorneys are versed in the law and should be keenly aware of what activities constitute a breach of the law. This knowledge is inconsistent with the central premise of entrapment, *i.e.,* an implantation of criminal intent in the mind of an innocent person. (*Sorrells v. United States* (1932), 287 U.S. 435, 77 L. Ed. 413, 53 S. Ct. 210.) Therefore, in only the rarest of circumstances may an attorney label himself innocent and shield himself with the defense of entrapment.

The respondent next contends that the Review Board's recommendation that he be suspended from the practice of law for one year *and* until further order of the court is excessive in light of the circumstances in which his actions occurred and the evidence in mitigation. Both the respondent and the Administrator agree that *In re Howard* 69 Ill. 2d 343, and *In re Kien* (1977), 69 Ill. 2d 355, are relevant and important to this issue. This court, in *Howard,* stated that "[t]he discipline to be imposed in

each case must be judged individually, based on the specific circumstances and conduct involved." (*In re Howard* (1977), 69 Ill. 2d 343, 354.) However, the court is keenly aware of the necessity for consistency in the imposition of discipline in similar cases.

The respondent seeks to distinguish *Howard,* urging that close analysis reveals that a substantially different discipline is warranted here than the two-year suspension imposed in *Howard.* In that case, the respondent paid the arresting officer $50 on two occasions to testify "to the truth" as listed on his alcoholic-influence report. In addition, respondent remarked, "I am probably going to have to spend some money with the State's Attorney," and stated that he had things "pretty well set with the judge." *In re Howard* (1977), 69 Ill. 2d 343, 348.

The respondent argues that *Howard* involved three separate transgressions over a period of several months, rather than the single momentary lapse of judgment involved here. We decline to characterize the respondent's act as a single momentary lapse. The offer made by Strutz occurred on the evening of September 27, 1972, but the money was not paid nor the report exchanged until the following evening. Thus, the respondent had ample time to reflect on the dialogue which had taken place at the Glencoe police station and to contemplate its implications. Respondent, who was not the defense counsel, must have realized that he could serve as a witness for Ormiston to impeach Strutz's testimony. More importantly, respondent had ample time to report the transgressions of Strutz to the proper authorities, but he failed to do so. This negates the idea of a momentary lapse in judgment.

Respondent also contends that in *Howard* the visual report with which the officer allegedly threatened to "bury" Howard's client was extremely damaging to Howard's client, whereas in the case at bar the report completed by Dr. Minnema was favorable to Ormiston, but

Strutz threatened to complete a false unfavorable report. However, there is no indication in *Howard* that the report was damaging to Howard's client. The respondent there had testified that he wanted the officer to testify in accordance with the visual report because "the responsive answers on the visual were so extreme that [he] couldn't believe it." (69 Ill. 2d 343, 348.) However, in *Howard,* the hearing panel specifically stated that it did not believe respondent's suggestion that he paid the money to the officer in order to get him to tell the truth. (*In re Howard* (1977), 69 Ill. 2d 343, 350.) In the case at bar, the panel's report found "that Respondent only wanted the Glencoe Police reports to be truthful and accurate" and that "Respondent's actions were solely motivated by concern that his client be treated fairly." Nonetheless, this court in *Howard* declared:

> "Whether it was to influence his testimony to be truthful or otherwise, such acts have the clear appearance of impropriety, bring law officers, the legal profession, and the court into disrepute, and hinder the administration of justice." *In re Howard* (1977), 69 Ill. 2d 343, 351.

While there may be some shades of difference between *Howard* and the case at bar, especially in Howard's remark implicating the State's Attorney and the trial judge, the general nature of the offense and circumstances surrounding each are remarkably similar. It may be assumed that both the hearing panel and the Review Board recommended a one-year suspension in light of the similarities of *Howard* and took the very facts of distinction between the two into consideration in recommending a one-year suspension for this respondent instead of the two-year suspension imposed in *Howard.*

The respondent also argues that *In re Kien* (1977), 69 Ill. 2d 355, is distinguishable. In *Kien,* the attorney was given an 18-month suspension for paying $50 to a

testifying police officer after a hearing on a motion to suppress a gun found by the officer when respondent's client was stopped for a traffic violation. Immediately before the suppression hearing, attorney Kien met with the arresting officer and conversed as to the circumstances surrounding the discovery of the gun. The officer stated, "I can find the gun wherever I want" and "You get what you pay for." (69 Ill. 2d 355, 359.) Kien agreed to pay $50. After the hearing, Kien met with the officer, paid him the $50 and was immediately arrested.

The respondent attempts to distinguish *Kien* in that the attorney there was a young attorney whose reputation for honesty and integrity cannot be equated to the respondent's here, who had an unblemished record after 27 years in the profession. While evidence of a respondent's reputation for honesty is no defense to charges of misconduct, it may be considered in mitigation. (*In re Kien* (1977), 69 Ill. 2d 355, 362.) We feel that the respondent's unmarred record for 27 years in the legal profession, along with the character witnesses' testimony as to his outstanding reputation, are factors in mitigation which influenced both the hearing panel and the Review Board in leniently recommending a one-year suspension rather than the 18-month suspension received by attorney Kien.

From our review of the record, we conclude that the recommended discipline be modified to the extent that the respondent be suspended from the practice of law for a period of one year.

*Respondent suspended.*