(No. 56119.—

*In re* REED HARRIS, Attorney, Respondent.

*Opinion filed December 17, 1982.*

286

288

SIMON, J., took no part.
MORAN and UNDERWOOD, JJ., dissenting.

Jerome Larkin, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Friedman & Koven, of Chicago (Phil C. Neal and Herbert L. Zarov, of counsel), for respondent.

CHIEF JUSTICE RYAN delivered the opinion of the court:

This disciplinary proceeding arises out of the fraudulent procurement of a barber's license issued to Theodore Kossof, a licensed beautician. At the time of the incident, 1971-72, Kossof was unable to legally cut men's hair because he did not possess a barber's license and did not meet the licensing requirements. Kossof obtained the barber's license in exchange for a cash payment to a public official with the assistance of the respondent in this action, H. Reed Harris, and another attorney, George Skontos, who in 1977 pleaded guilty to one count of mail fraud in connection with the procurement of the barber's license for Kossof. Skontos was disbarred on consent. (73 Ill. 2d R. 762.) Respondent was offered immunity in exchange for his testimony to a Federal grand jury, which led to Skontos' conviction.

On August 26, 1980, the Administrator of the Attorney Registration and Disciplinary Commission filed a complaint against respondent, charging him with conduct which tends to defeat the administration of justice and bring the courts and legal profession into disrepute, in

violation of Rules 1—102(a)(3) and 1—102(a)(4) of the Code of Professional Responsibility (85 Ill. 2d Rules 1—102(a)(3), 1—102(a)(4)). A panel of the Hearing Board found the respondent to be guilty of misconduct and saw "no alternative but to recommend disbarment" because "[t]here is scarcely any conduct more likely to undermine public confidence in the administration of justice than the bribery of public officials by attorneys." Respondent filed exceptions to the report and recommendation of the Hearing Board. The Review Board unanimously approved the findings of the Hearing Board, finding them to be supported by clear and convincing evidence. A majority of the Review Board concurred in the recommendation of disbarment, with two members recommending a one-year suspension. Respondent then filed exceptions before this court.

Respondent now raises three issues: (1) whether the complaint provided adequate notice of the misconduct of which he was found guilty; (2) whether the finding of guilt was supported by clear and convincing evidence; and (3) whether the sanction of disbarment is warranted by the misconduct.

In order to lay a background for a consideration of the issues respondent raises, it is necessary to review the facts in some detail. Respondent was licensed to practice law in Illinois on November 21, 1960. He first became acquainted with George Skontos in 1962; however, the events upon which this disciplinary proceeding is based did not occur until 1971-72. This sequence of events began in 1971 when Theodore Kossof, a beautician who cut respondent's hair, informed respondent that he could not legally cut men's hair without a barber's license. Kossof, who could not meet the licensing requirements, requested respondent's assistance in obtaining the right to legally cut men's hair. Respondent and Kossof first considered a *mandamus* action, but

Kossof later rejected litigation as too expensive and too slow.

In 1972 respondent consulted with George Skontos, also an attorney, on Kossof's behalf. At that time, Skontos was, and had been since 1969, the Chief Technical Advisor to the Illinois Department of Registration and Education, the agency responsible for the issuance of barber's and beautician's licenses. At the disciplinary proceeding, respondent claimed not to have been aware of Skontos' position, although he admitted knowing that Skontos was a State employee.

Skontos informed respondent that a barber's license could be secured for Kossof by means of a partially completed application form, accompanied by a payment in cash, the amount of which is in dispute. Respondent admits to the cash payment and claims the amount was $1,500; Skontos maintains the amount was $1,000, with an additional $200 in cash for himself for "political obligations." Respondent also charged Kossof another $1,000 as his fee for his assistance in the procurement of the license and the performance of other unrelated legal services.

Also in dispute is the procedure by which Kossof was to receive the sought-after license. Respondent testified that he thought the license was to be acquired by legitimate means, *i.e.*, by reciprocity, although Kossof had no barbering experience. Kossof testified, however, that when he asked respondent who else was to be involved in the procurement of his license, respondent replied: "You shouldn't know." Skontos testified that he informed respondent that the license would be issued after a cash payment, "an honorarium," to Robert Cook, the chairman of the Barbers' Committee. The disciplinary proceeding transcript reveals that Robert Cook later received criminal sanctions for his role in the issuance of barber's licenses to individuals who did not meet the li-

censing requirements.

It is undisputed that an affidavit was at some point attached to Kossof's barber's license application indicating that he possessed barbering experience in Mexico. To date, no one has admitted to authoring the fraudulent affidavit, however. Shortly thereafter, these suspicious circumstances came to the attention of Dominick Chirchirillo, an officer of the Master Barbers' and Beauty Culturists' Association. As a result of Chirchirillo's inquiry, on the advice of respondent and Skontos, the fraudulently issued license was returned. Kossof later requested, but did not receive, a refund of his cash payment. Several years later these events and other similar occurrences became the object of governmental investigations. The outcome of those investigations has been noted earlier.

With respect to the first issue, respondent argues that he was denied due process because the conduct charged in the complaint was "different from" the conduct of which respondent was found guilty. Specifically, respondent argues that "[t]he substance of the actual charge against Respondent was that he bribed Skontos," whereas "[t]he offense of which Respondent was found guilty by the Board was that Respondent conspired with Skontos to bribe some other public official." To this argument the Administrator replies that "[t]he instant complaint afforded notice that Respondent was being charged as a participant in a specific act of bribery with respect to this transmittal of cash from Kossof to Skontos."

At the outset we note that this court has the inherent power to discipline attorneys who have been admitted to practice before it and that the disciplining of attorneys is in the nature of an original proceeding in this court. The Attorney Registration and Disciplinary Commission and its various officers, as well as the Inquiry Board, the

hearing panel and the Review Board, serve this court in administering the disciplinary functions that have been delegated to them. (*In re Mitan* (1979), 75 Ill. 2d 118, 123-24, *cert. denied* (1979), 444 U.S. 916, 62 L.Ed. 2d 171, 100 S. Ct. 231.) This is different from this court's function in appellate review. The findings of fact of the hearing panel and the Review Board are entitled to virtually the same weight as the findings of any trier of fact, but their recommendations are advisory only. *In re Mitan* (1979), 75 Ill. 2d 118, 124, *cert. denied* (1979), 444 U.S. 916, 62 L. Ed. 2d 171, 100 S. Ct. 231; *In re Hallett* (1974), 58 Ill. 2d 239, 250.

Secondly, although both the supreme court rules and the rules of the Attorney Registration and Disciplinary Commission require that the complaint "reasonably inform" the respondent of the misconduct of which he is charged, this is clearly different from the standard in a criminal case. (73 Ill. 2d R. 753(b); Dis. Com. R. 4.1.) Attorney disciplinary proceedings are not criminal in nature. (*In re March* (1978), 71 Ill. 2d 382, 395; *In re Andros* (1976), 64 Ill. 2d 419, 423.) The purpose of a disciplinary proceeding is to safeguard the public, to maintain the integrity of the profession, and to protect the administration of justice from reproach. (*In re Saladino* (1978), 71 Ill. 2d 263, 275; *In re Lacob* (1972), 50 Ill. 2d 277, 279.) While an attorney may be disciplined only for the conduct with which he is charged, a disciplinary proceeding is not to be equated with a criminal proceeding, nor is the respondent attorney entitled to the same specificity as to the offense charged, or to the full panoply of rights afforded a criminal defendant. *In re Stillo* (1977), 68 Ill. 2d 49, 55; *In re Damisch* (1967), 38 Ill. 2d 195, 206; *In re Daley* (7th Cir. 1977), 549 F.2d 469, *cert. denied* (1977), 434 U.S. 829, 54 L. Ed. 2d 89, 98 S. Ct. 110; *People v. Harfmann* (Colo. 1981), 638 P.2d 745, 747.

In the instant case, the complaint filed by the Administrator follows the usual practice of amplifying the general charge that the respondent has been guilty of "conduct which tends to defeat the administration of justice and bring the courts and legal profession into disrepute" with more specific factual allegations found, in the instant case, in 16 additional paragraphs. The particular paragraph respondent complains of is No. 14, which reads as follows:

> "At the time Respondent delivered the cash and application to Skontos, Respondent was aware that Skontos was an employee of the Department of Registration and Education and that the money was a bribe to *a public official* to secure a license for Kossof through fraudulent means." (Emphasis added.)

Respondent argues that, as stated, the above factual allegation is properly understood as charging that respondent bribed Skontos. However, although it may be possible to read paragraph 14 as conveying the meaning which respondent urges, it is also equally possible to read that paragraph as charging respondent with participating in bribing *a* public official through Skontos.

The conclusion of the hearing panel which respondent objects to is stated as follows:

> "Respondent knowingly conspired with Mr. Skontos to bribe a public official to cause the issuance by the Illinois Department of Registration and Education of an Illinois barber's license for Mr. Theodore Kossof when Respondent knew that under the law, Mr. Kossof was not entitled to such a license."

Respondent argues that the Board's conclusion that "Respondent knowingly conspired with Skontos to bribe a public official" does not match the charge found in the complaint, discussed earlier, and that this "undisclosed shift in theory in this case plainly put Respondent at a disadvantage." However, respondent confuses the instant attorney disciplinary proceeding with a criminal trial. Respondent

was neither charged with nor found guilty of the *crime* of conspiracy. He was charged with and found guilty of participating in the procurement of an unlawfully issued barber's license by means of *a bribe to a public official.* Despite respondent's vigorous protestations to the contrary, a thorough reading of the hearing transcript reveals no evidence of surprise on respondent's part.

Furthermore, the case respondent cites to support his argument that he was denied due process is readily distinguishable from the instant case. (*In re Ruffalo* (1968), 390 U.S. 544, 20 L. Ed. 2d 117, 88 S. Ct. 1222.) In *Ruffalo,* the respondent was charged with soliciting FELA plaintiffs as clients through an agent, Michael Orlando, who was also a night-shift car inspector for the B&O Railroad Company. At the hearing respondent admitted that he employed Orlando but not for the purpose of soliciting. Rather, Orlando investigated cases for respondent. Some of the cases Orlando investigated involved his own employer, the railroad. The complaint was amended during the hearing to charge the respondent with misconduct based on his and Orlando's testimony.

The Supreme Court, in *Ruffalo,* found that respondent had "no notice that his employment of Orlando would be considered a disbarment offense until *after* both he and Orlando had testified at length on all the material facts pertaining to this phase of the case." (*In re Ruffalo* (1968), 390 U.S. 544, 550-51, 20 L. Ed. 2d 117, 122, 88 S. Ct. 1222, 1226.) The court concluded that it was a denial of due process to amend the charges on the basis of the testimony of the accused after the proceedings were underway. *In re Ruffalo* (1968), 390 U.S. 544, 551, 20 L. Ed. 2d 117, 122, 88 S. Ct. 1222, 1226.

The facts of the instant case clearly differ from those in *Ruffalo.* Respondent was charged and found guilty of misconduct which consisted of procuring an unlawfully issued barber's license by means of a bribe to a public official. Un-

like *Ruffalo,* there were no facts adduced at the hearing which caused the Administrator to amend the complaint. Respondent Harris, unlike respondent Ruffalo, did not walk into "a trap" for the unwary on the basis of his testimony at the hearing. A review of the pleadings and hearing transcript convinces us that respondent was "reasonably informed" at all stages of the proceedings of the misconduct with which he was charged.

Respondent next argues that he was not found guilty of misconduct by clear and convincing evidence. Essentially, respondent bases his argument on the fact that he never directly admitted to the misconduct. For example, respondent testified that he knew Skontos was a State employee but that he did not know Skontos worked for the Department of Registration and Education. Respondent admits transferring $1,500 in cash and a partially completed barber's license application to Skontos to procure a barber's license for Kossof but maintains that he assumed it was a legitimate transaction, even though no receipt changed hands and even though respondent knew Kossof had no barbering experience. Respondent's testimony was, in several crucial instances, contradicted or seriously undermined by the testimony of other witnesses at the hearing.

It is well established that the hearing panel which hears and observes the witnesses is in the best position to weigh conflicting testimony and to make determinations regarding the credibility of witnesses. (*In re Howard* (1977), 69 Ill. 2d 343, 351; *In re Smith* (1976), 63 Ill. 2d 250, 255; *In re Bossov* (1975), 60 Ill. 2d 439, 441, *cert. denied* (1975), 423 U.S. 928, 46 L. Ed. 2d 256, 96 S. Ct. 275.) In the instant case, one of the conclusions reached by the hearing panel was that "Respondent was not credible during the hearing." Although an accused in a disbarment proceeding is presumed to be innocent until the contrary is proved, there is no requirement that the Commission or the court be either naive or impractical in appraising the attorney's

conduct. (*In re Agin* (1970), 45 Ill. 2d 126, 130.) Furthermore, although an attorney can be tried only for the conduct charged against him, the failure to be candid and the giving of false testimony further demonstrates his unfitness to pursue the practice of law. (*In re Stillo* (1977), 68 Ill. 2d 49, 55; *In re Eaton* (1958), 14 Ill. 2d 338, 343.) In the instant case a careful review of the record convinces us that the findings of the hearing panel and the Review Board are supported by clear and convincing evidence.

The third issue raised by respondent is whether the sanction of disbarment is an excessive penalty for the misconduct involved. Upon consideration of all relevant factors, we find that in this case it is.

At the outset we note that the decision of what sanction is appropriate in a disciplinary matter rests with this court. (*In re Chernoff* (1982), 91 Ill. 2d 316, 324; *In re Hopper* (1981), 85 Ill. 2d 318, 323.) We note also that determining that the conduct which occurred requires discipline is often considerably less difficult than determining the appropriate nature and extent of the discipline. (*In re Grant* (1982), 89 Ill. 2d 247, 254.) In the instant case, the hearing panel recommended disbarment and a majority of the Review Board concurred. However, two members of the Review Board disagreed, recommending instead suspension for a period of one year.

With respect to the discipline to be imposed, each case must be judged individually based on the specific circumstances and conduct involved; however, this court is keenly aware of the necessity for consistency in the imposition of discipline in similar cases. *In re Porcelli* (1979), 77 Ill. 2d 473, 478-79; *In re Howard* (1977), 69 Ill. 2d 343, 354.

In the instant case, the misconduct which occurred was a single instance. Moreover, it occurred approximately 10 years ago, and there is no other evidence, or suggestion, of any other professional or personal misconduct by respondent during his 22 years as a member of the Illinois bar. Fi-

nally, he did not stand to gain personally or directly profit from his participation in the procurement of the barber's license for Kossof, other than the fee he charged for his services, part of which remains uncollected.

Although not identical to the instant case, this court's determinations as to the appropriate sanction in *Howard, In re Kien* (1977), 69 Ill. 2d 355, and *Porcelli* provide some guidance. In *In re Howard* (1977), 69 Ill. 2d 343, an attorney who made multiple payments to a police officer to secure his "truthful" testimony received a two-year suspension. Similarly, in *In re Kien* (1977), 69 Ill. 2d 355, an attorney who made a single payment to a police officer to secure his allegedly truthful testimony received an 18-month suspension because his "ethical aberration" was "less flagrant" than that in *Howard*. Finally, in *In re Porcelli* (1979), 77 Ill. 2d 473, the respondent was suspended for a period of one year for paying a police officer $300 to prepare an "accurate" alcohol-influence report on his client. Additionally, we recognize that the punishment of disbarment of an attorney means, for all practical purposes, the destruction of his professional life. *In re Donaghy* (1948), 402 Ill. 120, 134.

Thus, taking all of the above factors into consideration, we determine that disbarment is too extreme a sanction to be imposed in the instant case and instead impose upon respondent a three-year suspension.

Accordingly, it is hereby ordered that respondent be suspended for a period of three years.

*Respondent suspended.*

JUSTICE SIMON took no part in the consideration or decision of this case.

JUSTICE MORAN, dissenting:

I find this court's decision in *In re Rosenthal* (1978), 73 Ill. 2d 46, *cert. denied* (1979), 440 U.S. 961, 59 L. Ed. 2d 775, 99 S. Ct. 1505, not cited by the majority, to clearly

warrant the disbarment of respondent. In *Rosenthal*, respondents bribed a public official in order to obtain a zoning change sought by their client. This court rejected a number of factors offered by respondents in mitigation and ordered that they be disbarred. In the instant case, respondent procured for his client a barber's license by means of bribing a public official. The majority accepted the mitigating circumstances urged by respondent and ordered him suspended for three years. I fail to see any justification for the disparity in sanctions. Further, as this court stated in *Rosenthal*:

> "Corruption within government could not, in most instances, thrive but for those few attorneys, who, like respondents, are willing to tolerate such illegal activity if it will benefit their client. The practice of law is a privilege and demands a greater acceptance of responsibility and adherence to ethical standards than respondents have demonstrated. Their conduct, in facilitating and participating in the paying of money to [a public official], was clearly a breach of required professional conduct. Their activities discredited the integrity of the bar and impeded the administration of justice." 73 Ill. 2d 46, 56.

For the above reasons, I cannot agree with the sanction imposed herein.

JUSTICE UNDERWOOD joins in this dissent.