*In re* MELVIN A. HELLER *et al.*, Attorneys,
Respondents.

*Opinion filed December 6, 1988.—Rehearing denied
January 30, 1989.*

James J. Grogan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte, Ltd., of Chicago (William J. Harte and David J. Walker, of counsel), for respondent.

JUSTICE CLARK delivered the opinion of the court:

This matter is before the court upon exceptions of respondents, Melvin A. Heller and Jerrold L. Morris, to the reports of the Hearing Board and the Review Board recommending disbarment.

On September 5, 1986, the Administrator of the Attorney Registration and Disciplinary Commission filed with the Hearing Board a six-count complaint against respondents for their conduct in procuring for, assisting and/or facilitating Judge Reginald Holzer in obtaining at various times approximately $40,000. By reason of the conduct outlined in each of the counts, the complaint charges respondents with lending or giving a thing of value to a judicial officer in violation of Rule 7—110(a) of the Code of Professional Responsibility (Code) (107 Ill. 2d R. 7—110(a)); circumventing a disciplinary rule through the actions of another in violation of Rule 1—102(a)(2) of the Code (107 Ill. 2d R. 1—102(a)(2)); engaging in conduct involving dishonesty, fraud, deceit and misrepresentation in violation of Rule 1—102(a)(4) of the Code (107 Ill. 2d R. 1—102(a)(4)); engaging in actions prejudicial to the administration of justice in violation of Rule 1—102(a)(5) of the Code (107 Ill. 2d R. 1—102(a)(5)); engaging in actions that tend to bring the court and the legal profession into disrepute in violation of Supreme Court Rule 771 (107 Ill. 2d R. 771); and failing to avoid even the appearance of impropriety in violation of Canon 9 of the Code (107 Ill. 2d Canon 9).

Counts I through V of the Administrator's complaint, described in more detail below, involved five separate incidents of loans to or guarantees of loans for Judge Holzer from or by both Heller and Morris. Count VI involved an alleged payment from Heller to Holzer for assistance in securing admission into law school for Heller's son.

On February 24, 1987, a panel of the Hearing Board (panel) issued a report and recommendation in which it found by a "preponderance of the evidence" that both respondents were guilty of the misconduct charged in counts I through V of the Administrator's complaint but that the charges against Heller in count VI were not proven. The panel recommended disbarment. Respondents filed exceptions to the report with the Review Board.

On July 15, 1987, the Review Board filed an order remanding the case to the panel for such further proceedings as were deemed appropriate in order to review the evidence based upon a standard of *clear and convincing evidence* pursuant to Supreme Court Rule 753(c)(6) (107 Ill. 2d R. 753(c)(6)). The panel was further instructed to make individual findings, conclusions and recommendations as to each respondent.

On September 30, 1987, the panel, finding that further hearings were unwarranted, filed a revised report in which it found that the Administrator had proven by clear and convincing evidence that the respondents were guilty of the misconduct charged. The panel recommended disbarment. Respondents filed exceptions with the Review Board based on the revised report.

Respondents filed a brief and the case was orally argued before the Review Board. On January 13, 1988, the Review Board issued its report and recommendation in which it found that the panel had complied with the order of the remand. It also concurred with the findings of

fact and conclusions of law of the panel and recommended that respondents be disbarred.

On March 28, 1988, this court allowed respondents leave to file briefs and present oral argument. Respondents raise the following issues: whether the conclusion that Holzer extended favorable treatment to respondents in exchange for their arranging loans was established by clear and convincing evidence; whether the hearing panel's failure either to recuse itself or to conduct further proceedings upon remand was erroneous; whether respondents were properly judged separately in this consolidated case; and whether the recommendation of disbarment is warranted.

This case essentially does not raise any issues of fact. The statements of fact enunciated in the Administrator's complaint were virtually all admitted by the respondents in their answer.

Heller was admitted to the practice of law in 1950, and Morris was admitted in 1952. In addition to being licensed attorneys, each is a licensed real estate broker. Both have continuously practiced law since being admitted to the bar and have worked together as partners since 1958. The primary area of concentration for their law firm has been in plaintiffs' personal injury work although they have also done work in real estate and family matters. In their practice together, respondents have divided responsibility for the firm's business. Heller has generally been responsible for the internal matters of the office; he would meet with clients during initial office visits and take care of most client contact. In addition, he would negotiate with insurance carriers or with the self-insured parties. Once it appeared that a case would go to trial rather than be settled at this preliminary stage, however, Morris would take over. Heller never handled the pretrial steps necessary to take a case to trial nor did he ever try a case for the firm. Morris' re-

sponsibilities thus centered in the litigation of cases; he handled the motions, discovery, trials, and supervision of associates working on cases.

During the early 1970's, the law division of the circuit court of Cook County permitted attorneys to pretry a block of cases before a judge who would agree to hear a certain attorney's or firm's cases. Morris, believing that this would allow the firm's cases to be settled or removed from the court call more quickly, approached Judge Holzer about taking on such a block assignment. In late 1971 or early January 1972, Judge Holzer agreed to preside over the Heller & Morris pretrial cases. At that time there were 24 cases transferred to Judge Holzer for pretrial.

In January 1972 Judge Holzer asked Morris to come to his chambers to discuss an urgent matter. During this meeting Holzer told Morris that he, Holzer, had financial problems and asked if Morris knew anyone who could help him out financially. Holzer indicated a need for from $5,000 to $10,000. Morris told Holzer that his own money was tied up but that he would see what he could do. Morris returned to his office and discussed the situation with his partner, Heller. Morris noted in his testimony that he expressed a concern to Heller that there could possibly be adverse consequences for their clients if they did not assist Holzer. Morris and Heller decided to arrange a loan to assist Holzer. Rather than give Judge Holzer a firm or a personal check from either of them, however, Morris contacted his uncle by marriage, William Sidell, and asked that he provide a check in the amount of $3,500 made payable to Judge Holzer. In order to protect Sidell from any potential loss, Morris and Heller indicated that they would immediately give Sidell the $3,500. Morris further indicated that any interest paid would go to Sidell and any repayment of the principal should be returned to Morris and Heller. Respond-

ents contributed equally to Sidell from a firm draw in exchange for Sidell's check to Holzer.

On January 20, 1972, Morris delivered Sidell's check to Holzer, who then delivered to Morris a promissory note at 7% interest due April 20, 1972. The note was payable to Sidell in the amount of $3,500. Morris returned to his office, had Sidell indorse the note, and deposited the note in the firm's safe. To date, no portion of the principal of the loan has been repaid.

In September 1973 Morris again asked Holzer to preside over more Heller & Morris cases for purposes of pretrial. Holzer agreed and approximately 11 cases were transferred to him for pretrial. Sometime that same month Holzer again called Morris to his chambers to discuss the possibility of Morris arranging another loan for between $10,000 and $15,000. Morris initially declined to assist Holzer, noting Holzer's failure to pay even the interest on the prior loan, let alone any of the principal. Holzer promised to pay the interest and subsequently gave Morris a personal check made payable to Sidell for the interest. Morris again discussed Holzer's request for assistance with his partner and both agreed to help Holzer. Morris again contacted Sidell and had him draw a check payable to Holzer, this time in the amount of $5,000. Holzer's interest check was delivered to Sidell and the same arrangements were entered into as for the first loan. Both Heller and Morris contributed equally to Sidell to insure that Sidell would not lose any funds should Holzer fail to repay. Morris delivered Sidell's check to Holzer, and Holzer delivered a promissory note payable to Sidell due May 1, 1974, at 8% interest. Holzer indicated that both loans would be repaid by the May 1 date. Morris again had Sidell indorse the back of the note, and he put the note in the safe along with the January 1972 note. To date Holzer has failed to repay any portion of the principal or interest on the $5,000 loan.

In late 1976 Morris and Holzer again met in the judge's chambers. Holzer indicated that he was continuing to experience financial difficulties and asked Morris to arrange another loan. Although Morris initially refused, Holzer persisted and asked Morris to contact Morris' bank, a Skokie bank, to see if arrangements could be made to extend Holzer a loan. Morris discussed Holzer's request with his partner, Heller, and both agreed to help the judge. Morris contacted the president of the Skokie Trust and Savings Bank, who agreed to give Holzer a loan of $15,000 if there was a guarantor for the obligation. Heller then made arrangements for a personal friend, a doctor, to guarantee the loan and extended an oral promise to the friend that should he be called upon to repay the loan, they, Heller and Morris, would pay the loan. Prior to this, Heller had never asked this friend to guarantee a loan for another person.

Also during this same time period, December 1976, Morris interceded with officers of American National Bank on Holzer's behalf regarding a debt owed to that bank. According to Morris, had he not interceded, Holzer was convinced that the bank would have forced him into bankruptcy proceedings.

Again in August 1978, Holzer contacted Morris to request his assistance in procuring a $10,000 loan from the Skokie bank. Heller and Morris discussed Holzer's request, and they again agreed to assist the judge. Morris called the Skokie bank president, who again agreed to make the loan if there was a guarantor. This time, however, rather than involving anyone else, Heller and Morris each gave his own personal guarantee to secure the obligation.

In December 1979, respondents again executed personal guarantees for a $10,000 loan to Holzer, though it is not clear from the record whether this was a renewal

of the previous loan or whether this was an entirely new loan.

The above-noted loans or guarantees, entered into during January 1972, September 1973, December 1976, August 1978, and December 1979, constitute the activities described in counts I through V of the Administrator's complaint against respondents. Count VI of the Administrator's complaint involved an alleged payment of $1,000 to Holzer by Heller for the purpose of assisting Heller's son to gain admittance to law school. Even though Heller admitted the allegation in his answer to the complaint, the panel did not find sufficient evidence to establish a violation of the rules. The Administrator again raises count VI in his brief before this court; respondents argue that because the Administrator failed to file objections below he is now precluded from again arguing the charge. As our court has previously noted, a disciplinary proceeding before this court is in the nature of an original proceeding (*In re Harris* (1982), 93 Ill. 2d 285, 291) and the recommendations of the Hearing Board and the Review Board are advisory only (93 Ill. 2d at 292). However, because we find counts I through V sufficient to reach our decision, we need not herein address the allegation of count VI.

Before we begin our discussion of the issues presented by respondents, we note that respondents have admitted virtually all of the allegations contained in the Administrator's complaint. There is no dispute or question that respondents did arrange for or guarantee loans for Judge Holzer on the five dates noted above. Although there is some question as to the final total dollar amount of the loans (*i.e.*, whether the last two guarantees for $10,000 were for the same loan or were for additional advances) there is no question that respondents did assist Holzer by various means to obtain a substantial sum of money. Also, the record clearly indicates that

between 1971 and 1979 respondents' firm appeared of record before Judge Holzer in approximately 75 pending cases in the circuit court of Cook County. At no time during the pendency of the cases were adverse parties or their counsel advised of the relationship between Holzer and respondents.

In suggesting that it is necessary to question whether Holzer extended any favorable treatment to respondents, they insist that there was nothing to inform adverse parties about because they had shielded Holzer from knowledge of their personal involvement in the procurement of the loans. Respondents further argue that their only motive in so assisting Holzer was to help a friend in need. Morris and Holzer had met in law school, and although, according to respondent's testimony, they were not social friends, Morris indicated that they had a friendship "like members of a fraternity." We note, however, that Morris' own testimony belies this "friendship" tack. In discussing his own thoughts at the time of Holzer's original request for funds, Morris testified that the following went through his mind:

"I can't loan him money. This is a concern, a fear I had. I can't loan him money. He's a judge. I come before him.

Another concern. Well, if I don't loan him money, we have all these little clients. We have a big volume of personal people who are in the lower income bracket. *** And all these cases I never take changes of venue because there's too many of them. I would be fighting with my associates. So I have that policy.

So, all this was in my head. *** I said, you know, like I know he would never hurt us but *how do I know for sure? I just couldn't believe he would. He's a judge. You never know.*" (Emphasis added.)

It is not necessary for a review of a possible Rule 7—110(a) (107 Ill. 2d R. 7—110(a)) violation to determine what Holzer, the judicial recipient, knew or thought about the loans arranged for him by respondents, that is,

whether as a result of these loans he extended certain favorable treatment to respondents or their clients. Clearly these loans do not fall within any of the exceptions of the Code of Judicial Conduct enumerated in Rule 65(C)(4) (107 Ill. 2d R. 65(C)(4)), a portion of which rule is now to be read in conjunction with Rule 7—110(a) (see *In re Corboy* (1988), 124 Ill. 2d 29). While the new Code of Judicial Conduct only became effective in January 1987, a judicial code has been in effect in Illinois since 1970. Even without the Judicial Code, which is not here in question, respondents were well aware, as evidenced by their own testimony, of the problems inherent in procuring a loan for a judge before whom they practiced. Were favors granted? Was favorable treatment extended to respondents? It is not necessary to answer these questions in the affirmative to find a violation of Rule 7—110(a). Indeed, we need not even address the question of the judge's state of mind; we need only note that by the respondents' own admissions, a thing of value was given to a judge in violation of Rule 7—110(a) (107 Ill. 2d R. 7—110(a)). Even under the new rule adopted in *Corboy*, respondents are not excused, as they had a continuing practice before Holzer. It is clear to this court also that, at the very least, Morris' motivation was partially grounded in a fear of possible negative repercussions, as evidenced by his own testimony. Morris and Heller had a volume personal injury business, one that each wanted to protect.

We turn now to a discussion of the remaining issues raised by respondents. Was it necessary for the hearing panel either to recuse itself or to conduct further hearings on remand? This court finds that neither was required.

When the initial report of the panel reached the Review Board, the Review Board recognized that in reaching a decision, the panel had used an improper standard

of review. The case was remanded for individual findings as to each respondent and for a determination based on the proper standard: clear and convincing evidence. The remand instructions to the panel were for "such further proceedings it may deem appropriate." The panel found that "additional proceedings are unwarranted" and issued a revised report again recommending disbarment. The Review Board determined that its remand order had been complied with and issued its own report agreeing with the panel and recommending disbarment.

Respondents argue that there is no indication that the panel ever considered the case under the proper standard; indeed, they allege that human nature would preclude the panel from recommending anything other than disbarment since that had been its original ruling. To support their contention that the panel did not reconsider the case, respondents point to certain technical details of presentation and certain errors in the findings.

Respondents allege that the panel's revised report was merely an exact duplicate of the original with the improper standard "whited-out" and then photocopied. While it appears that pages two through six of the original report were reused in their original form in the revised report, that alone does not indicate a failure on the part of the panel to reconsider the case under the proper standard. The original first page was replaced by two new pages: one and one-A; the original pages seven and eight were replaced by three new pages: seven, eight and nine. Although it may be difficult to understand in these days of sophisticated word processing programs why the report was reissued in such a manner, the mere repetition of prior stated material does not render a report tainted.

As to the "error" in the findings, respondents allege that discussion of count VI in relationship to Morris indicates an improper consideration of the case because Mor-

ris was not ever implicated in the activities alleged in that count. Only Heller had approached Holzer in regard to getting his son into law school. As our court discussed in *In re Mitan* (1979), 75 Ill. 2d 118, the Boards serve as agents of this court in administering the disciplinary functions. Due to the nature of the proceedings, it is not necessary to consider such "technical objections as to the practice and procedures." (75 Ill. 2d at 124.) Disciplinary proceedings are neither criminal nor civil in nature, but are *sui generis*, resulting from the court's inherent power over its officers. (*In re Mitan* (1987), 119 Ill. 2d 229, 246.) While the error regarding application of count VI to Morris may indicate some lack of care in preparing the report, it is not enough to conclude that the case was not properly considered. Moreover, as this court has already indicated, findings of the panel and the Review Board are advisory only. Consequently, neither of respondents' allegations regarding the proceedings before the panel warrants a new hearing before a new panel.

Respondents next ask whether they were properly judged separately in this case. We find that each was given adequate separate consideration. We note that the actions of both Heller and Morris were so intertwined and joint that consolidation of the case against each was appropriate. The findings of the Hearing and Review Boards were separate as to each respondent. To wholly separate Heller from Morris because the former did not ever go to court is to miss the unified nature of their actions. Both agreed to each of the transactions entered into, both contributed equally to the loans to Holzer described in the Administrator's complaint, counts I through V, both gave guarantees to the Skokie bank, both stood to gain by the actions undertaken. As stated earlier in this opinion, it is not necessary for us to find that a benefit was indeed received, only that the activities occurred. See *In re Corboy* (1988), 124 Ill. 2d 29.

Having found that there has indeed been a violation of the Code, Rules 7—110(a), 1—102(a)(2), 1—102(a)(4), 1—102(a)(5), of Supreme Court Rule 771 and of Canon 9, we now turn to the task of an appropriate sanction— which, as respondents readily noted in oral arguments before this court, is at the heart of respondents' exceptions to the Review Board's report. While this court gives the Board's recommendations due deference, we note that final responsibility for determining the appropriate sanction in attorney disciplinary cases rests with this court. (*In re Harris* (1982), 93 Ill. 2d 285, 291-92.) Each disciplinary case is unique and must be evaluated based on the particular set of facts presented. (*In re Leonard* (1976), 64 Ill. 2d 398, 404.) The purpose of discipline is not to punish the attorney, but to protect the public and to maintain the integrity of the judicial system. *In re Pappas* (1982), 92 Ill. 2d 243, 247.

We agree with the unanimous reports of both the Hearing and Review Boards that the appropriate sanction in this case is disbarment for each respondent. These respondents knowingly and repeatedly assisted a judge, a judge before whom their firm regularly practiced, with loans from individuals and from banks. While our court has only recently addressed the issue of loans or gifts to judges under Rule 7—110, as we noted in *In re Corboy* (1988), 124 Ill. 2d 29, "eleemosynary motives *** are irrelevant." (124 Ill. 2d at 39.) Our court has long held that evidence of dishonest intent and motive is not necessary to justify the imposition of discipline. (*In re Clayter* (1980), 78 Ill. 2d 276,. 283; *In re Bloom* (1968), 39 Ill. 2d 250, 254.) Evidence showing lack of a dishonest intent is usually only appropriate to determine the nature and severity of the sanction imposed. *Clayter*, 78 Ill. 2d 276; *In re Thompson* (1963), 30 Ill. 2d 560.

While we note that many came forward to present evidence of the respondents' reputations for truth and

honesty, to present evidence of their many charitable activities, and to present evidence of the extent of their *pro bono* work, we do not find these sufficient to justify a lesser sanction. Respondents' reliance on cases from other jurisdictions is additionally not persuasive. For a period of over eight years, respondents continued to practice before a judge whom they had repeatedly assisted with loans. Such flagrant and continuous disregard for the integrity of our legal system cannot be countenanced. This case is distinguishable from *In re Ketchum*, in which respondent and the judge in question were longtime friends and where it was shown that respondent had a history of loaning money to the judge prior to his becoming a judge. (See *In re Ketchum* (1988), 124 Ill. 2d 50.) No such history was established in the instant case. Instead, the loans were procured contemporaneously with the respondents' request of the judge to handle some additional cases. It is therefore the order of this court that respondents be disbarred.

*Respondents disbarred.*