# Illinois Official Reports

## Appellate Court

---

### *Robison v. Orthotic & Prosthetic Lab, Inc.*, 2015 IL App (5th) 140079

---

| | |
|---|---|
| Appellate Court Caption | RANDY ROBISON, Plaintiff-Appellee, v. ORTHOTIC & PROSTHETIC LAB, INC., Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-14-0079 |
| Filed | February 4, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a product liability action where settlement negotiations were started and an agreement was ostensibly reached during a period when defendant had no knowledge of plaintiff's death or the appointment of a personal representative throughout the negotiations and plaintiff's counsel acknowledged that the disclosure would have had an adverse impact on the value of the settlement and that the decision to withhold the information was in his client's best interest, the appellate court held that plaintiff's counsel intentionally concealed a material fact that would have reduced the value of plaintiff's claim for damages and that the trial court erred in granting plaintiff's motion to enforce it; therefore, the order was vacated and the cause was remanded to the trial court for further proceedings, and, furthermore, the clerk of the appellate court was directed to transmit a copy of the appellate court's opinion in this case to the Attorney Registration and Disciplinary Commission for consideration of the actions of the attorneys in this case. |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 08-L-601; the Hon. Vincent J. Lopinot, Judge, presiding. |
| Judgment | Order vacated; cause remanded. |

Counsel on
Appeal

James L. Smith, of Kamykowski, Gavin & Smith, PC, of St. Louis, Missouri, for appellant.

Mark C. Scoggins, Clay B. St. Clair, and Anthony P. Gilbreth, all of Crowder & Scoggins, Ltd., of Columbia, for appellee.

Panel

PRESIDING JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Chapman and Schwarm concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Orthotic & Prosthetic Lab, Inc., appeals from an order of the circuit court granting a motion to enforce a settlement agreement in a product liability action. The defendant contends that the settlement agreement is invalid because the attorneys who purportedly represented the plaintiff during settlement negotiations lacked the authority to negotiate a settlement where the plaintiff had died and a proper representative of the estate had not been substituted as the party plaintiff. The defendant also contends that the settlement agreement is invalid because the attorneys who purportedly represented the plaintiff during settlement negotiations failed to disclose the material fact that the plaintiff had died eight months prior to the commencement of the negotiations. For the reasons that follow, we vacate the order granting the motion to enforce the settlement and remand the cause for further proceedings.

¶ 2    On November 24, 2008, the plaintiff, Randy Robison, through his attorneys, Crowder & Scoggins, Ltd. (the Crowder firm), filed a product liability action in the circuit court of St. Clair County against the defendant, Orthotic & Prosthetic Lab, Inc. The plaintiff alleged that he suffered serious injuries when a prosthesis, which was designed, manufactured, and sold by the defendant, failed while he was using it for its intended purposes. He sought damages for personal injuries, pain and suffering, and past and future medical expenses. The defendant, through its attorneys, Greensfelder, Hemker & Gale, P.C. (the Greensfelder firm), appeared, and the case proceeded on the usual path with motions, discovery, and disclosures of expert witnesses. In March 2013, the trial court noted that there had been little activity in the case between December 2012 and March 2013. The court also scheduled a status conference for April 29, 2013. The status conference was continued and rescheduled for July 1, 2013. The attorneys of record appeared on that date, and the court scheduled the case for a trial in October 2013.

¶ 3    In September 2013, the attorneys of record, James Smith, an attorney with the Greensfelder firm, and Anthony Gilbreth, an attorney with the Crowder firm, began settlement negotiations via email, and the email communications are a part of the record. On September 19, 2013, Mr. Smith emailed a final offer to settle the case for a sum certain to Mr. Gilbreth. In an email dated

September 24, 2013, Mr. Gilbreth provided the following response: "My client has instructed me to accept [amount redacted] in full and final settlement of this matter. Please provide an appropriate release and I will present it to my client for review and approval."

¶ 4    On October 24, 2013, the court was notified that a settlement had been reached and that the settlement documents were being drafted. The case was continued pending the execution of the settlement documents.

¶ 5    On November 7, 2013, Mr. Smith tendered a settlement agreement and a general release to Mr. Gilbreth. On Friday, November 15, 2013, Mr. Gilbreth sent an email to Mr. Smith and attached an amended version of the proposed release. The email stated, in part, as follows:

> "I also attach a Suggestion of Death and Order substituting Randy's son, Matthew, as Plaintiff in this matter. As you may already know, Randy passed away, and his son was appointed Administrator of his Estate in August. So long as you have no objection to Matt being substituted as Plaintiff, I can simply have the Order entered next time I am in Belleville."

It was via the email of November 15, 2013, that the defendant and its attorneys first learned that the plaintiff had died and that the plaintiff's son, Matthew Robison, had been appointed as the personal representative of his estate.

¶ 6    On Monday, November 18, 2013, Mr. Smith emailed Mr. Gilbreth regarding the failure to disclose the fact of Randy Robison's death. Mr. Smith asked Mr. Gilbreth whether the failure to disclose the fact of the plaintiff's death was intentional or an "unfortunate oversight." He also asked whether Mr. Gilbreth considered the death of the plaintiff to be a material fact in the context of settlement discussions in a personal injury case. In reply, Mr. Gilbreth stated that he and his office had researched the issue and determined that he had no affirmative duty to disclose the information because it was against his clients' interests and he had a duty to protect his clients' interests within the bounds of the rules of professional responsibility. On November 19, 2013, Mr. Smith advised Mr. Gilbreth that the defendant would not consent to the substitution of the plaintiff. He further advised that the defendant did not believe that the settlement was valid.

¶ 7    On December 30, 2013, Matthew Robison, personal representative of the estate of Randy Robison (the personal representative), by his attorneys of the Crowder firm, filed a motion to substitute plaintiff and a motion to enforce the settlement in the product liability case. In the motion to substitute plaintiff, the personal representative sought to be substituted as the party plaintiff, noting that the plaintiff, Randy Robison, died on January 20, 2013; that the cause of action survives; and that the personal representative of the probate estate of Randy Robison had been appointed by the circuit court in St. Louis County, Missouri, on August 27, 2013.

¶ 8    In the motion to enforce the settlement, the personal representative asserted that the plaintiff had accepted the defendant's offer of settlement on September 24, 2013; that the defendant tendered a settlement agreement and a release on November 7, 2013; that counsel for the plaintiff informed the defendant on November 15, 2013, that the plaintiff had died and that the personal representative of the plaintiff's probate estate would move to be substituted as the plaintiff for purposes of completing the settlement; and that on November 19, 2013, the defendant's counsel advised that the defendant would not consummate the settlement because the defendant was unaware, at the time of the settlement, that the plaintiff was deceased. The personal representative claimed that Randy Robison's death was not a proper basis for refusing to complete the settlement and that the settlement agreement should be enforced.

¶ 9 The defendant filed a memorandum in opposition to the motion to enforce the settlement. The defendant claimed that the settlement agreement was invalid because the authority of the Crowder firm to represent the plaintiff in the product case terminated upon the plaintiff's death and because there was no plaintiff of record when the settlement was negotiated. The defendant further argued that the settlement was invalid because the death of the plaintiff was a material fact that had been concealed from the defendant prior to and during settlement negotiations. The defendant attached the petition for letters of administration seeking the appointment of Matthew Robison as personal representative of Randy Robison's estate. The petition was filed in the circuit court of St. Louis County, Missouri, on July 9, 2013, by Kathie Blackman Dudley, an attorney with the Crowder firm. The defendant argued that the content of the petition showed that Mr. Gilbreth had knowledge of the plaintiff's death at least two months before settlement negotiations commenced.

¶ 10 The motions were called for hearing January 21, 2014. At the close of the hearing, the trial court granted the motion to substitute the personal representative as the party plaintiff and took the motion to enforce the settlement under advisement. The court entered an order granting the motion to enforce the settlement on January 22, 2014.

¶ 11 On appeal, the defendant contends that the circuit court erred in granting the motion to enforce the settlement. We agree.

¶ 12 In every suit, there must always be a plaintiff, a defendant, and a court. *Mitchell v. King*, 187 Ill. 452, 459, 55 N.E. 637, 639 (1900). An attorney's employment and his authority are revoked by the death of his client, and an attorney cannot proceed where he does not represent a party to the action. *Mitchell*, 187 Ill. at 459, 55 N.E. at 639; *Washington v. Caseyville Health Care Ass'n*, 284 Ill. App. 3d 97, 100, 672 N.E.2d 34, 36 (1996). Generally, the attorney-client relationship is terminated by the death of the client, and thereafter, the authority of the attorney to represent the interests of a deceased client must come from the personal representatives of the decedent. *Washington*, 284 Ill. App. 3d at 101, 672 N.E.2d at 36; *In re Marriage of Fredricksen*, 159 Ill. App. 3d 743, 512 N.E.2d 1080 (1987).

¶ 13 In this case, the plaintiff, Randy Robison, died on January 20, 2013. Upon Randy Robison's death, the product liability action was without a plaintiff, and the Crowder firm's authority to act on behalf of Randy Robison terminated. Under our procedural rules, this cause of action is one that survives the death of a party, and the personal representative of the decedent's estate is permitted to file a motion for substitution. See 735 ILCS 5/2-1008(b) (West 2002). The motion for substitution is to be filed within 90 days after the party's death is suggested of record, and the date of the actual death is not a factor. See *Ferak v. Elgin, Joliet & Eastern Ry. Co.*, 55 Ill. 2d 596, 600, 304 N.E.2d 619, 621 (1973). In this case, the motion to substitute plaintiff was timely filed on December 30, 2013, and the order authorizing the substitution of the personal representative as the party plaintiff was entered on January 21, 2014. Thus, from January 20, 2013, to January 21, 2014, the product liability action was without a plaintiff, and the Crowder firm did not represent a party to the action.

¶ 14 Settlement negotiations commenced in September 2013, and an agreement was ostensibly reached on September 24, 2013. The defendant, however, had no knowledge about the plaintiff's death or the appointment of a personal representative throughout the period of settlement negotiations. Mr. Gilbreth acknowledged that he did not disclose these facts to the defendant until November 15, 2013, weeks after the settlement was reached and months after the plaintiff's death. Mr. Gilbreth also acknowledged that the disclosure of the plaintiff's death

- 4 -

would have adversely impacted the settlement value of the case. He stated that he believed that the decision to withhold the information was in his clients' best interest and was in keeping with the rules of professional responsibility. We strongly disagree. We find that the arguments expressed by Mr. Gilbreth are specious and incredible, and we are concerned about his professional judgment in this case. In failing to disclose the fact of the plaintiff's death, Mr. Gilbreth intentionally concealed a material fact that would have reduced the overall value of the claim for damages. In addition, and equally troubling, Mr. Gilbreth led the defendant to believe that he had authority to negotiate a settlement of the litigation on behalf of the party plaintiff, when the action was without a plaintiff as the plaintiff had died and a representative had not been substituted. Given Mr. Gilbreth's intentional misrepresentations and material omissions prior to and during the settlement negotiations, we conclude that the settlement agreement is invalid and unenforceable, and that the trial court erred in granting the motion to enforce it. Accordingly, we hereby vacate the order granting the motion to enforce settlement and remand the cause to the circuit court for further proceedings.

¶ 15        Finally, we believe that we have a profound responsibility to comment on the conduct of the attorneys in this case. Lawyers who are admitted to practice in Illinois, and those who are not admitted but provide legal services within this jurisdiction, are subject to the Illinois Rules of Professional Conduct of 2010 (RPC). Ill. R. Prof. Conduct (2010) R. 8.5 (eff. Jan. 1, 2010). Rule 8.4(c) of the RPC states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. Ill. R. Prof. Conduct (2010) R. 8.4(c) (eff. Jan. 1, 2010). Rule 8.3 requires a lawyer to report unprivileged knowledge of misconduct involving fraud, dishonesty, or deceit, or misrepresentation by another lawyer to the Illinois Attorney Registration and Disciplinary Commission (ARDC). See Ill. R. Prof. Conduct (2010) R. 8.3 (eff. Jan. 1 2010); *In re Himmel*, 125 Ill. 2d 531, 539, 533 N.E.2d 790, 793 (1988).

¶ 16        In this case, we believe that the material omissions and misrepresentations made by Mr. Gilbreth, which were detailed earlier in this decision, constitute serious violations of Rule 8.4. We also believe that defense counsel possessed sufficient knowledge to trigger a duty to report Mr. Gilbreth's misconduct to the ARDC and that the failure to report the misconduct constitutes a potential violation of Rule 8.3. See *Himmel*, 125 Ill. 2d at 540-43, 533 N.E.2d at 793-94. Therefore, we will direct the clerk of this court to transmit a copy of this opinion to the Attorney Registration and Disciplinary Commission for its consideration of the actions of the attorneys in this case. While we bring to light potential violations of the rules of professional conduct by Mr. Gilbreth and Mr. Smith, we express no opinion as to the merits of any charges that may be brought against them in relation to those matters. Disciplinary proceedings and sanctions for unprofessional conduct rest exclusively within the inherent authority of our supreme court. *In re Harris*, 93 Ill. 2d 285, 291, 443 N.E.2d 557, 559 (1982). We intend that this case will serve as a reminder that the reporting obligations under our rules of professional conduct, though weighty and unpleasant, are influenced by a profound desire to maintain the integrity of our legal profession, to further the ends of justice, and to protect the public. *Himmel*, 125 Ill. 2d at 544, 533 N.E.2d at 795.

¶ 17        For the reasons stated, we hereby vacate the order of the circuit court granting the motion to enforce the settlement, and we remand this case to the circuit court for further proceedings. We further direct the clerk of this court to transmit a copy of this opinion to the Attorney

Registration and Disciplinary Commission for its consideration of the actions of the attorneys in this case.

¶ 18    Order vacated; cause remanded.